UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARRYL L. HAWTHORNE,

                                        Plaintiff,

                                                                    1:17-CV-00716
v.
                                                                    (GTS/TWD)
CITY OF ALBANY, et al.,

                                        Defendants.
_____

APPEARANCES:

DARRYL L. HAWTHORNE
Plaintiff, pro se
40 Anne Street
New York, New York 10038

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

I.    **INTRODUCTION**

Plaintiff's amended complaint in this *pro se* civil rights action brought under 42 U.S.C. §

1983 is before the Court for initial review.[1]  (Dkt. No. 8.)  Plaintiff, Darryl L. Hawthorne,

originally commenced this action against the City of Albany; Albany Police Officers Devin

Anderson, Sean Perkins, and Alex Cheban; and Albany Detectives John Norris and Tyson

Ruecker.[2]  (Dkt. No. 1.)  Plaintiff has added Albany Police Sergeant Christ as a Defendant in his

---

[1]  Plaintiff submitted his amended complaint to the Clerk on October 6, 2017.  (Dkt. No. 8.)  On November 6, 2017, Plaintiff submitted 179 pages of supplemental exhibits to the amended complaint.  (Dkt. Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, and 12-6.)  The Court has treated the supplemental exhibits as a part of Plaintiff's amended complaint in its initial review.

[2]  Plaintiff has identified Norris and Ruecker as police officers in both his original and amended complaints.  (Dkt. Nos. 1 at 1; 8 at 1.)  However, both Norris and Ruecker have been

amended complaint.  (Dkt. No. 8.)

The claims that survived initial review of Plaintiff's original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) are: (1) Plaintiff's Fourth Amendment claims of unreasonable search and seizure, excessive force, and false arrest asserted against Anderson and Perkins; (2) Plaintiff's Fourteenth Amendment due process claim for deprivation of property asserted against Anderson and Perkins; and (3) Plaintiff's false arrest claim against Ruecker.[3]  (Dkt. No. 7 at 3.[4])

The District Court dismissed Plaintiff's remaining claims on initial review, including: (1) Plaintiff's malicious prosecution claim against Anderson and Perkins; (2) Plaintiff's conspiracy claim against Ruecker; and (3) Plaintiff's claims against Cheban, Norris, and the City of Albany. (Dkt. No. 7 at 3.)  The claims were dismissed without prejudice and with leave to amend.  *Id.*

## II.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

---

identified as detectives with the Albany Police Department in Plaintiff's submissions.  (Dkt. Nos. 8-2 at 1; 8-3 at 2.)

[3] On initial review, the Court considered Plaintiff's claims that Defendants planted evidence and falsified documents as a part of his claim for false arrest.  (*See* Dkt. No. 4 at 12.)

[4] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all

3

of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    ANALYSIS OF PLAINTIFF'S AMENDED COMPLAINT

### A.    Surviving Claims Against Anderson, Perkins, and Ruecker from Plaintiff's Original Complaint

In his amended complaint, Plaintiff has realleged the unreasonable search and seizure, excessive force, false arrest, and deprivation of property claims against Defendants Anderson and Perkins which survived the initial review of his original complaint. (Dkt. No. 8 at 14-15, 17-20.) Plaintiff has also realleged the false arrest claim against Ruecker that survived initial review.[5] *Id*. at 18-19.

---

[5] The elements of a Fourth Amendment false arrest claim under § 1983 are: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

**B.    Malicious Prosecution Claims Against Anderson, Perkins, and Ruecker**

The elements of a Fourth Amendment malicious prosecution claim under § 1983 are substantially the same as the elements under New York law.  *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).  To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice.  *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010).  In addition, the Second Circuit requires that a plaintiff demonstrate there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures."  *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013); *see also Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) ("[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.") (internal quotation marks omitted).

Plaintiff's malicious prosecution claim against Anderson and Perkins was dismissed on initial review because his original complaint was devoid of allegations showing that Plaintiff had been arraigned on criminal charges, there had been a post arraignment seizure, he had been prosecuted on the charges, and he had obtained a favorable outcome.  (Dkt. No. 4 at 13.) Plaintiff has included an amended malicious prosecution claim against Anderson and Perkins and added a malicious prosecution claim against Ruecker in his amended complaint.  (Dkt. No. 8 at 14, 19.)

Plaintiff was arraigned on charges of criminal possession of a controlled substance and false impersonation the day following his arrest. *Id*. at 9. The trespass charge against him was dismissed by the court, and Plaintiff was released on his own recognizance. *Id*. Plaintiff was indicted on charges of criminal possession of a controlled substance in the third degree, a class B felony (N.Y. Penal Law § 220.16.16(1)) and criminal possession of a controlled substance in the fourth degree, a class C felony (N.Y. Penal Law § 220.16.09(1)) on June 19, 2005. (Dkt. No. 8-2 at 30-31.) The false impersonation charge was dismissed before trial. (Dkt. No. 8 at 10.) Plaintiff had a jury trial on the criminal possession charges in April of 2016 and was found not guilty by the jury. *Id*.; Dkt. No. 8-3 at 133-34.

Plaintiff was remanded into custody during the trial because he arrived late for jury selection. (Dkt. No. 8 at 10.) According to Plaintiff, the Judge remanded him because she and the prosecution believed they would have a better chance of having Plaintiff plead guilty if he were in jail and would have a better chance of obtaining a guilty verdict if the jury saw him in a jail jumpsuit. (Dkt. No. 8 at 11.)

The Court finds Plaintiff has alleged facts plausibly stating a claim for malicious prosecution under New York law. It is less clear whether being held in custody during his trial is sufficient for Plaintiff to satisfy the requirement of a post-arraignment seizure for a § 1983 malicious prosecution claim. Nonetheless, given that Plaintiff has adequately plead a state law malicious prosecution claim over which the District Court may elect to exercise supplemental jurisdiction and may be able to establish a malicious prosecution claim under § 1983, the Court recommends that Defendants Anderson, Perkins, and Ruecker be required to respond to Plaintiff's malicious prosecution claims.

C.    **John Norris**

Norris was named as a Defendant in Plaintiff's original complaint, and the Court recommended dismissal because there were no factual allegations in the complaint regarding Norris. (Dkt. No. 4 at 16.) In his amended complaint, Plaintiff alleges after he was strip searched at the precinct, Detectives Ruecker and Norris appeared "with sinister looks and smiles on their faces." (Dkt. No. 8 at 8.) They huddled with Anderson and Perkins whispering and the four then came over and told Plaintiff he was being charged with possession of crack cocaine. *Id*. Plaintiff alleges he turned to Anderson and said "you guys never found any drugs on me," and Anderson responded "well unless you have information about drugs or people that's (sic) buying or selling drugs, you're going to jail for drug possession." *Id*. Ruecker and Norris allegedly took Plaintiff for questioning. *Id*. Plaintiff claims Norris told him "the crack we have belongs to you. If you want to change that then you need to give us information about drugs in Albany and down in New York City, and individuals bringing drugs from New York City and other cities/states to Albany." *Id*. at 8-9. According to Plaintiff, he was charged with possession of a controlled substance, false impersonation, and trespass after denying any knowledge about drugs and refusing to be interrogated. (Dkt. No. 8 at 8-9.)

Plaintiff has asserted § 1983 claims against Norris for false arrest and malicious prosecution, with both claims involving the alleged planting of drugs and the falsification of documents in completing the DD5 on the confidential informant who allegedly provided the information leading to Plaintiff's arrest. *Id*. at 20. Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings be liberally construed, *see Sealed Plaintiff*, 537 F.3d 191, the Court recommends that Plaintiff's false arrest and malicious prosecution claims against Norris survive

*sua sponte* review and require a response.

    **D.**    **Sergeant Christ**

As noted above, Christ is newly named as a Defendant in Plaintiff's amended complaint. At Plaintiff's criminal trial, Anderson testified Christ was the booking sergeant at the time Plaintiff was brought to the precinct, and any time an officer goes into central booking, he or she has to advise the booking sergeant what is going on. (Dkt. No. 8-3 at 53.) Plaintiff alleges when Christ recognized him from an arrest in 2009, in which Anderson and Perkins had also planted crack cocaine on him and Christ had taken $3,000 from him, Christ allowed Plaintiff to be strip searched and subjected to an anal cavity search at the precinct. (Dkt. No. 8 at 17.) In his amended complaint, Plaintiff claims Christ was present during Plaintiff's strip and anal cavity searches and was at the precinct during his interrogation. (Dkt. No. 8 at 16.)

According to Plaintiff, Christ not only failed to supervise Anderson, Perkins, Ruecker, and Norris, but joined them in their wrongful conduct, including Plaintiff's false arrest and planting the drugs for which Plaintiff was charged. (Dkt. No. 8 at 16.) Plaintiff further alleges Christ failed to supervise Anderson while he was in the evidence room and while doing drug testing, and Christ documented Plaintiff as having only $776 and kept the remaining $3,224. *Id*.

While recognizing that the factual allegations against Christ are somewhat sparse, the Court nonetheless finds that in light of Plaintiff's *pro se* status and the Court's duty to liberally construe his amended complaint, Christ should be required to respond to Plaintiff's § 1983 claims for false arrest and violation of Plaintiff's due process claim for deprivation of property in connection with the $3,000 he claims was taken by Christ.

**E.    Alex Cheban**

The Court recommended dismissal of Plaintiff's original complaint against Cheban because the sole factual allegations against him were that he was contacted by Anderson and Perkins to drive Plaintiff to the precinct and patted Plaintiff down before transporting him there. (Dkt. No. 4 at 11.)

Plaintiff's claim against Cheban relates to the alleged discovery of a plastic bag containing crack cocaine under the back seat of the car in which Cheban had transported Plaintiff to the precinct.[6]  According to Anderson's trial testimony, he and Perkins did not strip search and conduct an anal cavity search on Plaintiff at Capitol Green as Plaintiff claims.  (Dkt. No. 8-3 at 45-49, 74.)  Anderson testified that they did search Plaintiff, including checking the several layers of clothing being worn by Plaintiff.  *Id.*  According to Anderson, while searching Plaintiff at Capitol Green, he saw a part of a plastic bag between Plaintiff's buttocks.  *Id.*  He then called for Cheban to transport Plaintiff to the precinct where he could be strip searched.  *Id.*

When no plastic bag was found during Plaintiff's strip and anal cavity searches at the precinct, Cheban was called back to the precinct so the car in which Plaintiff had been transported could be searched.  *Id.* at 53-55.  Anderson testified he found the plastic bag he had seen when he searched Plaintiff underneath the back seat where Plaintiff had been sitting.  *Id.* at 56-57.  Cheban testified he saw Perkins take the bag of drugs from under the backseat of the car where Plaintiff had been sitting.  *Id.* at 99-100.  According to Cheban, he checked the interior of

_____

[6] Plaintiff has included allegations in his amended complaint that Cheban began to drive off as Plaintiff was alighting.  (Dkt. No. 8 at 6.)  However, Plaintiff has not alleged any injury as a result and has not stated a claim for negligence or an intentional tort.

the car when he went on duty but did not check the back of the car after Plaintiff got out. *Id*.

Plaintiff claims Cheban was involved in planting the drugs under the back seat. (Dkt. No. 8 at 16.) The Court has construed Plaintiff's planting of drugs allegation as a part of Plaintiff's claim for false arrest against Anderson, Perkins, Ruecker, Christ, and Norris and finds that liberally construed, Plaintiff's amended complaint can be read to state claims for false arrest and malicious prosecution against Cheban for purposes of initial review. *See, e.g.*, *Paige-Bey v. City of New York*, No. 13-cv-7300 (SLT) (RER), 2016 WL 7217197, at *7-8 (E.D.N.Y. Dec. 12, 2016)[7] (allegations police officer planted evidence and perpetuated false testimony at trial sufficient to meet first element of a malicious prosecution claim at motion to dismiss stage).

Therefore, the Court recommends Plaintiff's false arrest and malicious prosecution claims against Norris survive *sua sponte* review and require a response.

## F.    City of Albany

Plaintiff named the City of Albany as a Defendant in his original complaint based upon a claim that the City engaged in negligent hiring, retention, and training of it agents, servants, and employees, including the Defendant members of the Albany Police Department. (Dkt. No. 1 at 6.) The Court recommended dismissal of the claim against the City on the grounds that Plaintiff's complaint was devoid of the requisite factual allegations to support his claim (Dkt. No. 4 at 17-18), and Judge Suddaby adopted the recommendation. (Dkt. No. 7 at 2-3.)

Plaintiff, again relying solely on conclusory assertions, has not corrected the deficiencies

---

[7] Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

in his claim against the City of Albany for negligent hiring, retention, and training.  (*See* Dkt. No. 8 at 13.)  *See Gray-Davis v. New York*, No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015) (conclusory allegations of failure to properly hire, train, and supervise municipal employees "without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fail to state a claim against [a municipality] that is plausible on its face.")

Plaintiff has added a supervisory liability claim against the City of Albany for the actions of the Defendants.  (Dkt. No. 8 at 13.)  However, a municipality may not be held liable under § 1983 based on the theory of *respondeat superior, see Monell v. Dept. of Soc. Serv. of City of New York*,  436 U.S. 658, 691 (1978), and Plaintiff has failed to allege facts showing the deprivation of his rights was caused by a governmental custom, policy, or usage of the City of Albany.  *Id.* at 690-91.

In light of the foregoing, the Court recommends the amended complaint be dismissed against the City of Albany for failure to state a claim.  Because Plaintiff has already been given the opportunity to amend his complaint, and the allegations in his amended complaint, construed liberally, give no indication that a valid claim might be stated if Plaintiff were given another opportunity to amend, *see Gomez,* 171 F.3d at 795, the Court recommends that the dismissal against the City of Albany be with prejudice.

**ACCORDINGLY**, it is hereby

**ORDERED** that the supplemental exhibits to the amended complaint submitted by Plaintiff (Dkt. Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, and 12-6) be added to Plaintiff's amended complaint (Dkt. No. 8) and that the amended complaint and supplemental exhibits together be

accepted as the operative pleading in the case; and it is hereby

      **RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 8) be **DISMISSED**

**WITH PREJUDICE** against Defendant City of Albany; and it is further

      **RECOMMENDED** that Defendants Anderson and Perkins be required to respond to

Plaintiff's claims for the unreasonable search and seizure, excessive force, false arrest, and

malicious prosecution; and his due process claim for deprivation of property alleged in the

amended complaint (Dkt. No. 8.); and it is further

      **RECOMMENDED** that Defendants Ruecker, Norris, and Cheban be required to respond

to Plaintiff's claims for the false arrest and malicious prosecution claims alleged in the amended

complaint (Dkt. No. 8); and it is further

      **RECOMMENDED** that Defendant Christ be required to respond to Plaintiff's claim for

false arrest, and his due claim for deprivation of property alleged in the amended complaint (Dkt.

No. 8); and it is hereby

      **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance with

the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the

---

     [8]  If you are proceeding pro se and are served with this Order and Report-
Recommendation by mail, three additional days will be added to the fourteen-day period,
meaning that you have seventeen days from the date the Order and Report-Recommendation was
mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed
period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of
the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated:   November 14, 2017
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

13

2015 WL 2120518
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lafrancis GRAY–DAVIS;
and Myrell Davis, Plaintiffs,

v.

State of NEW YORK; Paul Rigby, Senior Parole
Officer; Tammy Gronan, Parole Officer; Mr. Green,
Parole Officer; Mr. Maher, Parole Officer; Ms.
Delaney, Parole Officer; Mr. Fregoe, Parole Officer;
Ms. Montford, Supervisor Parole Officer; Robert
Butera, Parole Officer; Anthony I Annucci, Acting
Comm'r of Dep't of Corr. and Cmty. Supervision;
Tinam. Stanford, Chair of Bd. of Parole; Randy W.
Blume, Assist. Comm'r of Onondaga Cnty. Dep't
of Corr.; Timothy H. Cowin, Comm'r of Onondaga
Cnty. Dep't of Corr.; Cnty. of Onondaga; Onondaga
Cnty. Dep't of Corr.; City of Jamesville; City of
Syracuse; Syracuse City Police Dep't; John Doe
Nos. 1–4, Parole Officers; John Doe Nos. 5–
15, Syracuse City Police Officers; and John Doe
16, Chief of Syracuse City Police, Defendants.

No. 5:14–CV–1490 (GTS/TWD).
|
Signed May 5, 2015.

**Attorneys and Law Firms**

Lafrancis Gray–Davis, Syracuse, NY, pro se.

DeRoberts Law Firm, Jeffrey DeRoberts, Esq., of
Counsel, Syracuse, NY, for Plaintiff Myrell Davis.

### *DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this civil rights
action filed by LaFrancis Gray–Davis and her minor son
Myrell Davis ("Plaintiffs"), against the above-captioned
entities and individuals ("Defendants") arising from two
searches by police and the institution of special conditions
by parole officers between December 2013 and April
2014, is the Report–Recommendation of United States

Magistrate Thérèse Wiley Dancks recommending that
certain of Plaintiffs' claims be dismissed with prejudice,
certain of the claims be dismissed without prejudice (and
with leave to amend as authorized by the Court), and
certain of the claims survive the Court's initial review of
Plaintiffs' Complaint. (Dkt. No. 6.) Plaintiffs have not
filed an objection to the Report–Recommendation and
the deadline in which to do so has expired. (*See generally*
Docket Sheet.)

When *no* objection is made to a report-recommendation,
the Court subjects that report-recommendation to only
a *clear error* review. Fed.R.Civ.P. 72(b), Advisory
Committee Notes: 1983 Addition. When performing such
a "clear error" review, "the court need only satisfy itself
that there is no clear error on the face of the record in
order to accept the recommendation." *Id.: see also Batista
v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y.
July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt
those sections of [a magistrate judge's] report to which no
specific objection is made, so long as those sections are
not facially erroneous.") (internal quotation marks and
citations omitted).

Here, based upon a review of this matter, the Court can
find no clear error in Magistrate Judge Dancks' thorough
Report–Recommendation. (Dkt. No. 6.) Magistrate
Judge Dancks employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. (*Id.*) As a result, the Report–Recommendation is
accepted and adopted in its entirety for the reasons stated
therein.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 6) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are *DISMISSED*
**with prejudice** and **without leave to amend:**

(1) all claims against Defendant State of New York;

(2) all claims against Defendant Onondaga County
Department of Corrections;

(3) all claims against Defendant Syracuse City Police
Department;

(4) Plaintiffs' 42 U.S.C. § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4;

(5) Plaintiffs' claim for violation of their Fifth and Ninth Amendment rights; and it is further

**ORDERED** that the following claims **shall be DISMISSED with prejudice** and without further Order of this Court **UNLESS,** within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiffs file an Amended Complaint correcting the pleading deficiencies referenced in Magistrate Judge Dancks' Report–Recommendation:

   **\*2** (1) Plaintiffs' claims against Defendant County of Onondaga;

   (2) Plaintiffs' claims against Defendant Hamlet of Jamesville (a/k/a City of Jamesville);

   (3) Plaintiffs' claims against Defendant City of Syracuse;

   (4) Plaintiffs' claims against Defendants Butera, Blume, Cowin and John Doe No. 16; and

   (5) Plaintiffs' claims against Defendants Annucci and Stanford (**EXCEPT** for their 42 U.S.C. § 1983 claims for money damages against those two Defendants in their official capacities, which claims again are dismissed with prejudice and without leave to amend); and it is further

**ORDERED** that any Amended Complaint that Plaintiffs chose to file shall be a complete pleading, which will supersede their original Complaint in all respects, and may not incorporate any portion of the original Complaint by reference, in accordance with Local Rule 7.1(a)(4) of the District's Local Rules of Practice; and it is further

**ORDERED** that Plaintiffs' remaining claims—i.e., their claims against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford ("Remaining Defendants") for violation of Plaintiffs' First, Fourth and Fourteenth Amendment rights—**SURVIVE** the Court's initial review of the Complaint; and it is further

**ORDERED** that the District Court shall issue summonses, along with copies of the Complaint and

General Order 25, to the United States Marshal for service upon the remaining Defendants; and it is further

**ORDERED** that counsel for the Remaining Defendants shall file a formal response to the surviving claims in the Complaint in accordance with Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiffs shall take reasonable steps to identify Defendant John Doe Nos. 1–15 and, if necessary, make a motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that the Clerk of Court serve a copy of this Decision and Order upon Plaintiff LaFrancis Gray–Davis by regular mail.

### *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Complaint of *pro se* Plaintiff LaFrancis Gray–Davis, on her own and on behalf of her son, Myrell Davis, was received for filing in the Northern District of New York on December 11, 2014, along with an application to proceed *in forma pauperis*. (Dkt. Nos. 1 and 2.) By Order of December 18, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis*. (Dkt. No. 4 at 2–3.) Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of her minor child, Myrell, *see Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir.1990)*, the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel, at least for her minor son. *Id.* at 3. Attorney Jeffrey DeRoberts, Esq. filed a Notice of Appearance on behalf of Myrell Davis on January 8, 2015, thereby removing the impediment to initial review of the Complaint. (Dkt. No. 5.)

### I. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Even when a plaintiff meets the financial criteria for *in forma pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ...

the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## II. PLAINTIFF'S COMPLAINT

**\*4** Plaintiff met James D. Davis ("Davis") in July of 2009, when he was on parole supervision, and the couple had a child, Myrell Davis, in 2010. (Dkt. No. 1 ¶¶ at 5 and 6.) Davis was violated by parole supervision on September 22, 2011, and Defendant Senior Parole Officer Paul Rigby ("Rigby"), who allegedly had a vendetta against Plaintiff because of her association with Davis, acted to prevent Plaintiff and Davis from being married at the Onondaga County Justice Center in November of 2011. *Id.* at ¶¶ 7–8.)

Plaintiff and Davis were married on November 12, 2012, while Davis was incarcerated, and on July 30, 2013, when Davis was about to be released, Plaintiff was informed by his parole officer, Defendant Ms. Montford ("Montford"), that she and her son and all family members were not permitted to have contact with Davis. *Id.* at ¶¶ 9–10. Included in the special conditions in the Certificate of Release to Parole Supervision signed by Davis on August 6, 2013, was the condition "17. I will not associate in any way or communicate by any means with ... Latesha Dexter and Lafrancis Gray without the permission of the P.O." *Id.* at p. 56. Included in a list of Special Conditions of Release to Parole Supervision in connection with Plaintiff's July 30, 2013, release, signed by Davis on February 24, 2014, were:

13(i): I will have no in person contact, or attempt to contact **Eric Roam, Latesha Dexter and/or LaFrancis Gray–Davis.** Either in person or members of their immediate family by means of letter, telephone, cell

phone, third party, electronic means or any other methods without the knowledge and written permission of my parole officer. Failure to follow this rule is a violation of my parole in an important respect.

13(q): I will have contact with any children in common with *LaFrancis Gray–Davis* if court ordered only.

*Id.* at pp. 58, 60. Depending on Davis' parole officer, Plaintiff and Davis have at times been able to have contact with one another and even share a home. Other times they have not. *Id.* at ¶ 12.

On Christmas Eve or Christmas day of 2013, Defendant parole officers John Doe Nos. 1 through 4 searched Plaintiff's home looking for Davis, whom they had reason to believe was there. *Id.* at ¶ 13. Davis was not in the house, and according to Plaintiff, because he was not paroled to her address and was not supposed to be there, the four Doe Defendants had no probable cause to invade her home and privacy and search her house. *Id.*

On March 11, 2014, at approximately 7:45 p.m., while Plaintiff, with Myrell in the car, was giving Davis a ride home, she was pulled over by Defendant Parole Officers Tammy Gronau ("Gronau"), Mr. Green ("Green"), Mr. Maher ("Maher"), Ms. Delaney ("Delaney"), and Mr. Fregoe ("Fregoe"), along with Defendant Syracuse Police Officers John Doe Nos. 5 though 15. *Id.* at ¶ 14. Defendants Gronau and Green searched Plaintiff's car and found several empty beer cans and a folding knife that Plaintiff claims belonged to her. Defendants also stated that Myrell was not in a child safety seat, which Plaintiff contends is untrue. *Id.* Davis was taken into custody. *Id.* According to Plaintiff, the only reason the vehicle was stopped was that she and her son were with Davis. *Id.*

**\*5** On April 1, 2014, Plaintiff received a letter from Defendant Randy W. Blume (Blume"), Assistant Commissioner of the Onondaga County Correctional Facility, stating that due to the special conditions prohibiting Davis from having contact with her and her son, he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility unless or until the conditions of parole were removed. *Id.* at ¶ 17.

## III. ANALYSIS

Plaintiff's Complaint contains ten causes of action for violation of Plaintiff and her son's right to privacy and freedom of association under the First Amendment; illegal search and seizure in violation of the Fourth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fifth Amendment; violation of Plaintiff and her son's right to privacy and other rights protected under the Ninth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fourteenth Amendment; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence; supervisory liability, including failure to train, supervise, and control employees, employers, agents and successors; and violation of 42 U.S.C. § 1983. [1] (Dkt. No. 1 at ¶¶ 19–101.) The allegations of wrongdoing by Defendants set forth in each of the causes of action appear to be virtually identical. *Id.*

### A. State of New York

Plaintiff has named the State of New York as a Defendant. The only allegations directed to the State in the Complaint are conclusory assertions of supervisory liability. (*See, e.g.,* Dkt. No. 1 at ¶ 23.) Plaintiff's claims against the State are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The bar precludes claims against the State for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Therefore, the Court recommends that the action be dismissed with prejudice as against the State of New York on sovereign immunity grounds.

### B. Municipal Defendants

Plaintiff has named as Defendants the County of Onondaga, City of Jamesville, [2] and the City of Syracuse. The Onondaga County Department of Corrections and Syracuse City Police Department have also been named as Defendants. However, as explained in *Baptista v. Onondaga County Dep. of Corrections,* No. 9:04–CV–0600 (LEK/GHL), 2007 WL 911854, at \* 5, 2007 U.S. Dist. LEXIS 20536, at \* 13 (N.D.N.Y. Mar.22, 2007), the County of Onondaga Department of Corrections and the County of Onondaga "are one in the same the County of Onondaga, a municipal corporation of the State of New York ." Furthermore, "[a] police department is an

administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (citing *Loria v. Town of Irondequoit,* 775 F.Supp. 599, 606 (W.D.N.Y.1990); *see also Dexter v. City of Syracuse,* No. 5:14–CV–0363 (TJM/DEP), 2014 WL 2611384, at *4, 2014 U.S. Dist. LEXIS 80008, at *11 (N.D.N.Y. June 11, 2014). Therefore, any claims Plaintiff might have against the County of Onondaga Department of Corrections and City of Syracuse Police Department are properly asserted against the County of Onondaga and City of Syracuse, respectively.

**\*6** Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012) (citing *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611), *cert. denied,* ––– U.S. ––––, 134 S.Ct. 125 (2013); *see also Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection an 'affirmative link' between the policy and the deprivation of his constitutional rights.") (citing *Oklahoma v. Tuttle,* 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)) (plurality opinion).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County, the hamlet of Jamesville, or the City of Syracuse which resulted in the deprivation of her and her son's constitutional rights. A municipality may be liable for deprivation of constitutional rights under § 1983 with regard to policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, Plaintiff's conclusory allegations that Onondaga County, Jamesville, and the City of Syracuse

failed to properly hire, supervise, and train subordinates, without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face. *See Trombley,* 550 U.S. at 570; *Hall v. Smith,* 170 F. App'x 105, 108 (11th Cir.2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)

Given the foregoing, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendants County of Onondaga, Jamesville, and the City of Syracuse without prejudice; and be dismissed with prejudice as against the Onondaga County Department of Corrections and the Syracuse City Police Department, given that any claims Plaintiff may be able to plead with regard to the two departments would be properly asserted against the County of Onondaga and City of Syracuse.

### C. Plaintiffs' Official Capacity Claims For Money Damages Against the State Official Defendants

**\*7** Plaintiffs have asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants. (Dkt. No. 1 at p. 9.) The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment has been found to bar official capacity claims for money damages against New York Department of Correctional and Community Supervision ("DOCCS") officials and parole officers. *See Tolliver v. New York State Corrections Officers,* No. 99CIV.9555(JGK), 2000 WL 1154311, at * 2, 2000 U.S. Dist. LEXIS 11531, at * 7 (S.D.N.Y. Aug.14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."); *James v. Suffolk County Correctional Facility,* No. 13–CV–2344 (JFB)(SIL), 2014 WL 4659300, at *4, 2014 U.S. Dist. LEXIS 131056, at * 10–11 (E.D.N.Y. Sept. 17, 2014) (official capacity claims for money damages against parole officers are barred by the Eleventh Amendment).

Case 1:17-cv-00716-GTS-TWD Document 13 Filed 11/14/17 Page 19 of 30

Therefore, the Court recommends that Plaintiff's § 1983 claims for money damages against Defendants Anthony J. Annucci ("Annucci"), Acting Director of DOCCS, Tina M. Stanford ("Stanford"), Chair of the Board of Parole, and all of the Defendant Parole Officers, including Defendants John Doe 1 through 4, in their official capacities be dismissed with prejudice on Eleventh Amendment grounds.

**D. Supervisory Liability**

Defendants Annucci, Stanford, Tim Cowan ("Cowan"), Commissioner of the Onondaga County Department of Correction, and John Doe No. 16, Chief of the Syracuse City Police, have all been sued in their supervisory capacities by Plaintiff.[3] (*See, e.g.,* Dkt. No. 1 at ¶ 23.)[4] In the case of Defendants Annucci and Stanford, the subordinates include the Defendant Parole Officers, including Defendants John Doe 1 through 4. (Dkt. No. 1 at ¶ 23.) Blume is identified as Cowan's subordinate. *Id.* In the case of Defendant John Doe No. 16, the subordinates include Syracuse Police Officers Defendants John Doe Nos. 5 through 15. *Id.*

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/ RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and

the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*8** The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 maybe found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Plaintiff has alleged that Defendants Annucci, Stanford, Cowan, and John Doe 16 failed to properly hire, oversee, supervise, train, and control their subordinates. (Dkt. No. 1 at ¶ 23.) Vague and conclusory claims that a supervisory official has failed to provide proper training and supervision or created a specific policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV– 240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (same).

Plaintiff has also parroted each of the *Colon* factors as grounds for supervisory liability. *Id.* "Conclusory statements and formulaic recitations of the Colon factors [that are] wholly unsupported by facts," present no factual support for a supervisory liability claim. *Eldridge v. Kenney,* No. 11–CV–6459–FPG, 2014 WL 2717982, at * 3, 2014 U.S. Dist. LEXIS 84437, at * 2–3 (W.D.N.Y. June 16, 2014).

In light of Plaintiff's failure to allege facts of a nonconlusory nature showing personal involvement by

Annucci, Stanford, Cowan, and John Doe No. 16 in the alleged violations of Plaintiff and her son's constitutional rights, the Court recommends that Plaintiff's § 1983 claims be dismissed without prejudice as against those Defendants.

### E. Defendant Butera

Defendant Robert Butera (Butera") is identified as a Parole Officer in Plaintiff's Complaint. (Dkt. No. 1 at p. 4.) With the exception of Plaintiff's inclusion of Butera's name in the conclusory claims of wrongdoing in each of her causes of action, *id.* at ¶ 23, the Complaint is devoid of factual allegations regarding Butera. As noted above, personal involvement in a constitutional deprivation is a prerequisite to an award of damages under § 1983." *McKinnon,* 568 F.2d at 934; *see also Crichlow v. Fischer,* No. 12–cv–7774 (NSR), 2015 WL 678725, * 9, 2015 U.S. Dist. LEXIS 18812, at * 17 (S.D.N.Y. Feb. 17, 2015) (dismissing defendants from the case upon initial review under 28 U.S.C. § 1915(e) where the plaintiff made no factual allegations regarding personal involvement on their part in the violation of plaintiff's rights). The complete absence of factual allegations of wrongdoing by Bufera warrants dismissal of Plaintiff's state law claims as well. Therefore, the Court recommends that the case be dismissed without prejudice as against Defendant Butera.

### F. Defendant Blume

**\*9** The sole factual allegation in the Complaint against Defendant Blume, the Assistant Director of the Onondaga County Department of Corrections is that he informed Plaintiff that he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility due to the special conditions prohibiting Davis from having contact with her and her son unless and until the condition of parole was removed. *Id.* at ¶ 17. Inasmuch as there are no factual allegations indicating that Blume was doing anything more than complying with special conditions of release to parol supervision that had been imposed by DOCCS, the Court recommends that the case be dismissed without prejudice as against him.

### G. Plaintiff's Ninth Amendment Claim

Plaintiff claims that the Defendants violated her and her son's right to privacy and other rights guaranteed under the Ninth Amendment. (Dkt. No. 1 at ¶ ¶ 42–49.) The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is a "rule of construction" and does not give rise to "individual rights." *Jenkins v. C.I.R.,* 483 F.3d 90, 92–93 (2d Cir.2007) (Ninth Amendment is not an independent source of individual rights but a rule of construction). Therefore, to the extent Plaintiff is asserting a § 1983 claim for an independent violation of the Ninth Amendment, the Court recommends that the claim be dismissed with prejudice as against all of the Defendants.

### H. Plaintiff's State Law Claims for Negligence and Intentional and Negligent Infliction of Emotional Distress

Plaintiff has included state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence against the Defendants for denying her and her son the benefits that arise from familial association, for subjecting them to the unreasonable search of her home and car, and, in the case of the municipal defendants and Annucci, Stanford, Cowin, and John Doe No. 16, for failing to properly supervise their subordinates.

#### 1. *Intentional Infliction of Emotional Distress*

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and (4) severe emotional distress." *Bender v. City of N.Y.,* 78 F.3d 787, 790 (2d Cir.1996). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001). The Court finds that the allegations in Plaintiff's Complaint do not show conduct making a plausible showing of intentional infliction of emotional distress by any of the Defendants and recommends that the claim be dismissed without prejudice as to all Defendants.

#### 2. *Negligence and Negligent Infliction of Emotional Distress*

**\*10** Although Plaintiff has alleged that the Parole Officer and Syracuse Police Department Defendants intentionally

and/or negligently denied her and her son's right to association and subjected them to unreasonable searches and seizures, the factual allegations in the Complaint reveal that Plaintiff's claims are premised on intentional not negligent conduct. A claim for negligent infliction of emotional distress maybe established under either (1) the "bystander theory" or (2) the "direct duty theory." *Baker v. Dorfman,* 239 F.3d 415, 421 (2d Cir.2000). Both theories require an act of negligence and physical injury or the threat of danger, either to the plaintiff or to a close family member. *Id.* To recover under the "bystander theory," the plaintiff must be "threatened with physical harm as a result of the defendant's negligence" and "consequently suffer[ ] emotional injury from witnessing the death or serious bodily injury of a member of [his or her] immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1966). To recover under the "direct duty" theory, a plaintiff must suffer an emotional injury from defendant's breach of a duty which unreasonably endangered [his or her] own physical safety." *Id.*

The Court finds that Plaintiff's Complaint fails to allege facts stating a plausible claim for either negligence or negligent infliction of emotional distress against Defendants and recommends that the claim be dismissed without prejudice as against all of the Defendants.

### I. Plaintiff's Surviving Claims

Plaintiff's Complaint asserts claims for violation of her and her son's First Amendment right of liberty in their family life and Fourteenth Amendment due process right to intimate association [5] as a result of the imposition and enforcement of the special conditions of release to parole supervision that prevent Plaintiff and her son from being with Davis, as well as her Fourth Amendment right to be free from unreasonable searches and seizures in connection with the search of her home in December of 2013 and the traffic stop and search of her car on March 11, 2014. (Dkt. No. 1 at pp. 13, 18, and 41.)

Mindful of the Second Circuit's instruction to liberally construe a *pro se* plaintiff's pleadings, *see Sealed Plaintiff,* 537 F.3d at 191, the Court recommends that Plaintiff be permitted to pursue her and her son's First, Fourth, and Fourteenth Amendment claims (first, second and fifth causes of action) against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, and John Doe Nos. 1–15.

The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that the case be dismissed with prejudice as against: (1) Defendant State of New York on sovereign immunity grounds; (2) Defendant Onondaga County Department of Corrections on the grounds it is one and the same with Defendant County of Onondaga; and (3) Defendant Syracuse City Police Department on the grounds that it is not an entity capable of being sued; and it is further

**\*11 RECOMMENDED** that the following claims be dismissed with prejudice: (1) Plaintiff's § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4 on Eleventh Amendment grounds; and (2) Plaintiff's claim for violation of her and her son's Fifth and Ninth Amendment rights for failure to state a claim; and it is further

**RECOMMENDED** that the case be dismissed for failure to state a claim, with leave to file an amended complaint as authorized by the District Court as against Defendants: (1) County of Onondaga; (2) Jamesville; (3) City of Syracuse; (4) Bufera; (5) Blume; (6) Cowin; (7) John Doe No. 16; and (8) Annucci and Stanford (except without leave to amend § 1983 official capacity claims for money damages); and it is further

**RECOMMENDED** that the District Court direct service on Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford of the surviving claims for violation of Plaintiff and her son's First, Fourth, and Fourteenth Amendment rights; and it is further

**RECOMMENDED** that Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford be required to file a formal response to the surviving claims as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**RECOMMENDED** that Plaintiff be directed to take reasonable steps to identify Defendants John Doe Nos. 1–

Case 1:17-cv-00716-GTS-TWD    Document 13    Filed 11/14/17    Page 22 of 30
Gray-Davis v. New York, Not Reported in F.Supp.3d (2015)
2015 WL 2120518

15, and, if necessary, make an appropriate motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. *Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.* Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report–Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance

with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**\*12** Dated: March 27, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2120518

Footnotes

1   42 U.S.C. § 1983 does not create any independent substantive rights, but rather serves as a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).
2   The Court takes judicial notice that Jamesville, New York is a hamlet located within the Town of DeWitt, not a city. (*See* http:// www.townofdewitt.com/LivingDeWitt.aspx last visited on March 24, 2015.)
3   Plaintiff has recommended dismissal of Plaintiff's supervisory claims against the municipal Defendants under *Monell.*
4   Plaintiff has repeated the identical conclusory allegations of supervisory liability against the Defendants in each of her ten causes of action. (*See* Dkt. No. 1 at ¶¶ 23, 30, 38, 46, 54, 62, 69, 76, 83, 90.)
5   Plaintiff has also asserted a due process claim under the Fifth Amendment. (Dkt. No. 1 at p. 21.) However, the due process clause of the Fifth Amendment applies only to actions taken by the federal government, not state or local governments. *See Schweiker v. Wilson,* 450 U.S. 221, 227, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *see also Canfield v. Douglas County,* No. 14–cv–00461–KMT, 2014 WL 7186749, at \* 5, 2014 U.S. Dist. LEXIS 173224, at \* 12–13 (D.Col. Dec.16, 2014) (Fifth Amendment deprivations such as those challenging due process rights to familial association with no allegation of federal involvement are not actionable under the Fifth Amendment).

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7217197
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Zaire Paige-Bey, Plaintiff,

v.

City of New York, et al., Defendants.

13-cv-7300 (SLT)(RER)
|
Signed December 7, 2016
|
Filed 12/12/2016

**Attorneys and Law Firms**

Zaire Paige-Bey, Alden, NY, pro se.

Joseph Aaron Gutmann, New York City Law Department, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

TOWNES, United States District Judge

 *1  *Pro se* plaintiff Zaire Paige-Bey ("Plaintiff") commenced this action on December 30, 2013, alleging numerous constitutional violations arising out of an incident on August 16, 2008. Defendants City of New York, Police Officer Rashan Lacoste, Assistant Prosecutor Darren Albanese, Former New York City Police Commissioner Raymond Kelly, Former New York City Mayor Michael Bloomberg, Former Brooklyn District Attorney Charles J. Hynes (collectively the "Defendants")[1] move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, Defendants' motion to dismiss is hereby **GRANTED in part and DENIED in part.**

### I. BACKGROUND

The following facts are drawn from the Amended Complaint dated April 21, 2014 (the "Amended Complaint"), and the documents attached to the Amended Complaint, and are assumed to be true for the purposes of this memorandum and order. On August 16,

2008, Plaintiff was visiting his infant child on the second floor of 2050 Strauss Street in the Brownsville section of Brooklyn, New York, when he heard a loud disturbance on the first floor. Police Officer Rashan Lacoste ("Officer Lacoste") appeared on the second floor where he came upon and "began searching" Plaintiff. (Am. Compl. ¶ 21.) Lacoste did not have a warrant. (*Id.*) Police Officer David Lawrence ("Officer Lawrence") also came up to the second floor and, together with Officer Lacoste, "singled out" Plaintiff and brought him downstairs where other officers were in the process of searching the premises. (*Id.* ¶ 22-27.) Four pistols were recovered at the scene, along with a quantity of drugs. Plaintiff was handcuffed, along with three other men who were present on the premises. (*Id.* ¶ 25.)

When the search was complete, all four men were removed from the premises and taken to the 73rd Precinct. After being held for several hours, Officer Lacoste proceeded to question Plaintiff, without reading him Miranda warnings, allegedly telling him "there is no lawyer who can help you, only I can help you, help your self [sic], and if you don't help me, everything found in the house would be charged against you." (*Id.* ¶ 30.) Plaintiff stated he was innocent and requested to speak with an attorney. (*Id.* ¶ 32.) Plaintiff was then strip-searched and escorted to a holding cell. (*Id.* ¶ 32-33.) He was held "during the high humidity summer" in a room with no window or proper ventilation. (*Id.* ¶¶ 64, 80.) When Plaintiff asked for water, he was told by Officer Lacoste "you will get it when you get to Rikers." (*Id.*, ¶ 34.) He received neither food nor water for approximately sixteen hours while in custody. (*Id.*, ¶ 64.) Plaintiff was then transferred to Kings County Central Booking in Downtown Brooklyn where he received water. (*Id.*, ¶ 80.) There, he was "confronted again to harsh and cruel, punishment being subjected to filthy condition[s] in the enclosed confinement, which resulted in mental and emotional distress[ ], not being able to eat, sleep, nor being able to make contact with his family." (*Id.*, ¶ 34.) Plaintiff further asserts that he was held "in a dirty confinement, that ha[ ]d no proper ventilation, nor air conditioning, or working facilities such as the toilet, and water fountain." (*Id.*, ¶ 69.) It is unclear whether this last description is of the 73rd Precinct, or Brooklyn Central Brooking.

 *2  Allegedly motived by Plaintiff's prior complaints of excessive force and "stop and frisk" practices (*id.*, ¶¶ 45, 55), Lacoste and Lawrence prepared allegedly

false charges relating to the incident, which resulted in a sixteen-count grand jury indictment on October 29, 2008, which charged Plaintiff with various degrees of possession of a weapon and possession of a controlled substance. (Indictment #10896/2008, Doc. 4-1, at 2-3, 7-13.) Although Plaintiff's allegations are far from precise, he appears to allege that officers Lacoste and Lawrence manufactured evidence that resulted in his conviction, presumably evidence concerning the guns or drugs found at the scene. To that end, Plaintiff alleges that the officers "unlawfully planted false evidence" causing him to be tried on "false charges." (¶ 48). On the basis of that evidence, the indictment was served on Plaintiff on December 5, 2008. (*Id.*, at 1.) The officers allegedly testified falsely before the grand jury and at two subsequent trials. [2] (*Id.*, ¶ 49, 89.) Plaintiff was acquitted of the charges. (Plaintiff's Aff. in Opp'n to Mot., Doc. 26-1, at 1.)

On December 30, 2013, Plaintiff commenced this action against Defendants, asserting numerous constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1985, premised on the First, Fourth, Fifth, and Fourteenth Amendments. Liberally construed, these claims include First Amendment retaliation, false arrest and imprisonment, unreasonable searches, deliberate indifference, discrimination, and malicious prosecution.

Most of the claims arise out of Plaintiff's arrest, confinement, and interrogation on August 16, 2008, and other events leading up to the grand jury indictment issued on October 29, 2008. However, the malicious prosecution claims and related allegations of misconduct arise out of conduct during the subsequent prosecution on that indictment.

## II. ANALYSIS

### A. Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b) (6), a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Rothstein v. UBS AG*, 708 F.3d 82, 90 (2d Cir. 2013). Aside from the allegations in the complaint, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor do legal conclusions and other naked assertions unsupported by facts. *Id.* To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a party has not "nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*

### B. Timeliness

The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Since Section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to Section 1983 is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Paige v. Police Dept. of City of Schenectady*, 264 F.3d 197, 199, n. 2 (2d Cir. 2001). The date on which an action accrues is governed by federal law, *see Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997), which provides that an action generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002), cert. denied, 538 U.S. 922 (2003); *see also Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.") The rule is slightly different for false arrest and false imprisonment claims. These claims accrue when the alleged false arrest or imprisonment ends, which occurs at the time the plaintiff "becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). However, New York's tolling rules apply. *Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001) ("federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions, as well as the state's tolling rules.")

**\*3** Plaintiff commenced suit on December 30, 2013. Thus, in light of the three-year statute of limitations for Section 1983 claims, any claims that accrued before December 30, 2010 are untimely unless the claims are tolled according to New York law. New York law provides for both statutory and equitable tolling under certain circumstances. Statutory tolling, as codified in New York Civil Practice Law and Rules, acts to extend the time Plaintiff may file an action where, for example, the defendant is absent from the state at the time the action accrues, the plaintiff suffers from a disability, or the plaintiff has died. *See* N.Y.C.P.L.R. §§ 207, 208, 210. Case law also provides for equitable tolling, sometimes referred to as "equitable estoppel," which bars defendants from interposing a statute of limitations defense "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" and where plaintiff has reasonably relied on the misrepresentations. *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 849 N.E.2d 926, 929 (N.Y. 2006) (quoting *Simcuski v. Saeli*, 44 N.Y.2d 442, 449, 377 N.E.2d 713 (N.Y. 1978)). Equitable tolling is not available unless the plaintiff can "establish that subsequent and specific actions by defendants somehow kept [the plaintiff] from timely bringing suit." *Id.*

The time to file a Section 1983 claim can also be extended under the Continuing Violation Doctrine (the "CVD"), which provides an exception to the normal rule that a claim accrues when the plaintiff knows or should know of the injury giving rise to his claim. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). When a Section 1983 claim challenges a discriminatory policy, the CVD will extend the limitations time until the last discriminatory act committed in furtherance of that policy occurs. *Id.* The Second Circuit has applied the doctrine to Eighth Amendment deliberate indifference claims and has promulgated the following test: "the plaintiff must allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy." *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)) (internal quotation omitted, alterations in original). This test is meant to screen out "claims that challenge discrete acts of unconstitutional conduct or that fail to allege acts within the relevant statutory period that are traceable to a policy of deliberate indifference." *Id.* The CVD will not apply merely where a plaintiff "continues to feel the effects of a time-barred" act. *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.

1999); *Gonzalez v. Hasty*, 802 F.3d 212, 221-23 (2d Cir. 2015).

Most of the events giving rise to Plaintiff's Constitutional claims occurred on August 16, 2008, and at other unspecified times leading up to the grand jury indictment, which issued on October 29, 2008. These include all of Plaintiff's claims arising out of his arrest and confinement on August 16, 2008, as well as claims regarding false charges filed against him and false testimony before the grand jury. Plaintiff was aware of the conditions of his confinement and improper searches on the day they occurred, August 16, 2008, which is therefore also the day these claims accrued. Plaintiff's false arrest and imprisonment claims accrued at his arraignment [3], which is also when the false charges claim accrued, since Plaintiff would have been present and have known of the charges. Additionally, Plaintiff must have known or should have known of the grand jury-related misconduct near in time to the issue of the indictment on October 29, 2008, and in any event, well before October 18, 2010, the date of a hearing on the indictment. (Doc. 4-1, at 107.) Thus, all claims premised Plaintiff's arrest and confinement, including any related Section 1985 conspiracy claims, accrued outside the limitations period, i.e. before December 30, 2010.

**\*4** Further, there is no statutory or equitable basis for tolling these claims. No tolling provision of the N.Y.C.P.L.R. is applicable, and Plaintiff has made no allegations of any kind to suggest that he was prevented from filing a suit within three years by any misrepresentation or fraud of Defendants. The discrete nature of Plaintiff's arrest, confinement, interrogation, strip search, charging, and the grand jury testimony, make application of the CVD inappropriate. *See Gonzalez v. Hasty*, 802 F.3d 212, 220-24 (2d Cir. 2015) (holding that the CVD did not apply to First and Fifth Amendment claims based on discrete acts that occurred outside the limitations period). Therefore Plaintiff's claims arising out of his arrest and confinement on August 16, 2008 and the grand jury proceedings culminating on October 29, 2008, including his claims for retaliation, false arrest and imprisonment, unreasonable searches, discrimination, deliberate indifference, and conspiracy to commit the foregoing are untimely. [4]

Plaintiff's sole remaining claim for malicious prosecution did not accrue until Plaintiff was acquitted of the charges

in the indictment. Such claims did not accrue until Plaintiff was acquitted of the charges in the indictment. *See Smith v. Campbell*, 782 F.3d 93, 100-101 (2d Cir. 2015) (explaining that retaliation claims accrue at the time of the retaliatory event, while Fourth Amendment malicious prosecutions claims accrue when the underlying criminal case ends in failure) (citing *Poventud v. City of New York*, 750 F.3d 121, 130-131 (2d Cir. 2014)). There is nothing in the record indicating the date Plaintiff was acquitted. However, Plaintiff affixed a hearing transcript dated April 6, 2011 marked with his indictment number. On that basis the Court will assume that Plaintiff was acquitted after that date, which is within the limitations period.

### C. Claims against Hynes and Albanese

Prosecutors are entitled to absolute immunity "from claims for damages arising out of prosecutor duties that are 'intimately associated with the judicial phase of the criminal process.' " *Parkinson v. Cozzolino*, 238 F.3d 145, (2001) (2d. Cir. 2001) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)). In determining whether a prosecutor is entitled to absolute immunity, courts employ a functional approach, which looks to the nature of the function that the prosecutor was performing at the time of the complained of actions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). If counsel was acting in her role as an advocate, she is entitled to absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Functions that serve "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [a prosecutor's] role as an advocate for the State" are unquestionably entitled to absolute immunity. *Buckley*, 509 U.S. at 273. On the other hand, if she was acting in an investigatory capacity, she is entitled only to the qualified immunity that is normally given to executive officials pursuing their duties. *Id.* (observing that qualified immunity is the norm for executive officers.) Conduct for which a prosecutor is absolutely immune includes "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Fitzsimmons*, 509 U.S. at 273. In addition, this absolute immunity "bars suit for malicious prosecution, even in the complete absence of even arguable probable cause." *Armatas v. Maroulleti*, No. 08-CV-310 (SJF)(RER), 2010 WL 4340437, at *12 (E.D.N.Y. Oct. 19, 2010) (citing *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 502-05 (2d Cir. 2004)); *see also Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2010 WL

3924677, *16 (E.D.N.Y. Sept. 30, 2010) ("Assuming arguendo that there was no probable cause to continue the prosecution ..., the County defendants are protected by absolute immunity with respect to the decision to continue the ongoing prosecution.").

**\*5** Here, the Amended Complaint makes a number of allegations against Albanese and Hynes related to the handling of Plaintiff's prosecution on the indictment. Specifically, Plaintiff alleges: (1) Albanese and Hynes presented false evidence and testimony before the grand-jury and at trial (Am. Compl. ¶¶ 39, 55), (2) Albanese and Hynes failed to investigate the evidence and information submitted to them by the Officers before seeking charges against Plaintiff (*id.* ¶ 50), and (3) Albanese was malicious and aggressive with Plaintiff during trial, and was deliberately indifferent to Plaintiff's appearance at court in a prejudicial and embarrassing state, in restraints and without a belt, (*id.* ¶¶ 54, 65, 59).

All this alleged conduct relates directly to conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430-31. First, absolute immunity shields prosecutors from claims they presented false evidence at court or to a grand jury. *Burns v. Reed*, 500 U.S. 478, 479; *Kent v. Cardone*, 404 Fed.Appx. 540, 543 (2d Cir. 2011) ("A prosecutor is absolutely immune with respect to non-investigatory conduct before a grand jury."); *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (prosecutor absolutely immune from Section 1983 claims for presenting false evidence to grand jury). Second, whether or not Albanese and Hynes adequately "investigated" the evidence provided to them by Officers Lacoste and Lawrence, the evaluation of that evidence for the purpose of deciding whether to seek an indictment is an entirely judicial function for which they are entitled to absolute immunity. *Buckley*, 509 U.S. at 273. Plaintiff makes no allegations that Hynes or Albanese performed investigatory functions for which they would not be entitled to immunity. *See Flagler v. Trainor*, 663 F.3d 543, 550 (2d Cir. 2011) (ADA not absolutely immune for gathering evidence by accessing domestic violence victim's voicemail without her consent). Third, Albanese's courtroom manner and tactics constitute conduct in the course of presenting a case to a court, and were well within his advocative functions for which he is absolutely immune. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) (explaining the issue for absolute immunity is whether the prosecutor was functioning as an advocate,

and noting "[t]he immunity attaches to [the prosecutor's] function, not to the manner in which he performed it.") (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)) (alterations in original). Thus, Hynes and Albanese are absolutely immune from Section 1983 liability for claims based on presentation of evidence to the grand jury or at trial, evaluation of evidence provided by Officers Lacoste and Lawrence, and Albanese's trial manner. All such claims against Hynes and Albanese must therefore dismissed.

### D. Claims against Hynes, Kelly, Bloomberg, and New York City

Plaintiff's remaining claims against District Attorney Hynes, Commissioner Kelly, Mayor Bloomberg, and New York City must also be dismissed for failure to state a claim. Plaintiff has failed to alleged facts that establish personal involvement by any remaining individual defendant or *Monell* liability as to the City.

Regarding the supervisory defendants, Plaintiff has failed to alleged facts establishing personal involvement. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *accord, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") The Second Circuit has held that personal involvement of a supervisory defendant may be established in five ways:

**\*6** 1. [t]he defendant participated directly in the alleged constitutional violation,

2. the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,

3. the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,

4. the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or

5. the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[5] Plaintiff asserts that Brooklyn District Attorney Hynes: (1) was deliberately indifferent to "policies and practice of filing complaints falsely" despite knowledge of fabricated evidence (Am. Compl. ¶ 35), (2) "failed to investigate fully the evidence and information submitted" by Lacoste and Lawrence (*id.* ¶ 50), and (3) is liable for "gross negligence, by failure to supervise" and train Albanese sufficient to prevent his malicious prosecution (*id.* ¶ 98). With respect to Commissioner Kelly, Plaintiff asserts, (1) as commissioner, Kelly "bears responsibility" for the officers' actions (*id.* ¶ 35), and (2) he is liable for gross negligence for failing to discipline law enforcement personnel (*id.* ¶¶ 35, 97). With respect to Mayor Bloomberg, Plaintiff asserts, (1) that he acted with deliberate indifference toward Plaintiff despite knowledge of a policy or practice of discrimination by achieving convictions through false testimony (*id.* ¶ 102-04), and (2) that he is liable for gross negligence for failing to discipline law enforcement personnel (*id.* ¶ 97). None of these assertions rest on factual allegations that establish any of the five *Coughlin* factors. Rather, Plaintiff essentially asserts "threadbare recitals" of the factors themselves and his assertions are supported by "mere conclusory statements." *Iqbal*, 556 U.S. at 678. More specifically, he has not alleged facts demonstrating that former District Attorney Hynes, Commissioner Kelly, or former Mayor Bloomberg participated in or plausibly knew of any violation of his rights. Nor has he alleged facts establishing the presence of a custom or policy, negligent supervision, or deliberate indifference to information indicating that unconstitutional acts were occurring. Accordingly, Plaintiff has failed to state a claim against these individual defendants.

**\*7** Plaintiff has for similar reasons failed to state a claim against the City. Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), a municipality may be held liable under § 1983 only when a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N. Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)) (internal quotations marks omitted). To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 226 (2d. Cir. 2004). Rather, it is "sufficient to show ... that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law,' or that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.* (internal citations omitted). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Here, regarding the City, Plaintiff asserts (1) "[t]he administrative processing investigative prongs intentionally distortions of truth seeking process" [sic] (*id.* ¶ 97), (2) that the City "acted with [i]ndifference toward [Plaintiff] for the legislation it acted upon, which the discrimination against [Plaintiff] on the bases of his non-suspect classification" [sic] (*id.* ¶ 94), and (3) that the city acted with deliberate indifference to officers Lacoste and Lawrence's false testimony and malicious prosecution (*id.* ¶ 95). These conclusory allegations, where coherent, are devoid of facts establishing a custom or policy that caused Plaintiffs alleged harms. Plaintiff has therefore failed to state a claim against the City.

**E. Remaining claims against Officers Lacoste and Lawrence**

The only cause of action not resolved by the above analyses is Plaintiff's claim for malicious prosecution as against Lacoste and Lawrence. To state a Section 1983 claim for malicious prosecution Plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law. *Manganiello v. City* of N.Y., 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). In New York, the elements of malicious prosecution are (1) the initiation of a criminal proceeding, (2) its termination in favor of the accused, (3) lack of probable cause, and (4) actual malice. *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001).

When liberally construed and assumed to be true, the allegations against Lacoste and Lawrence sufficiently state a claim for malicious prosecution. Plaintiff alleges that the two officers "singled [him] out" in retaliation for his complaint of excessive force and stop and frisk procedures and entered his house without a warrant. (¶¶ 20-22). With that motivation they "unlawfully planted false evidence" (which the Court assumes involved either the guns or drugs at issue) and filed false arrest reports and supporting information, thereby causing Plaintiff to be tried on "false charges." (¶ 48). Later, after indictment, the officers provided false testimony concerning the planted evidence in front of both the grand jury and at trial. (¶¶ 45, 49-50, 55, 89).

These allegations establish that the officers "initiated" a criminal proceeding for the purposes of stating a malicious prosecution claim. Where arresting police officers engineer false evidence and perpetuate false charges as witnesses in court, as the officers are alleged to have done here, they "initiate" a criminal proceeding for the purposes of stating a malicious prosecution claim. *See, e.g.*, *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (holding that defendant officer initiated prosecution by preparing allegedly false documents and forwarding them to prosecutors); *Jouthe v. City of New York*, No. 05-1374, 2009 WL 701110, at *11 (E.D.N.Y. Mar. 10, 2009) ("A police officer may also be held liable for malicious prosecution if he provides false information to the prosecutor that influences a decision whether to prosecute.") (internal quotation marks omitted); *Stewart v. City of New York*, No. 06 Civ. 15490, 2008 WL 1699797, at *7 (S.D.N.Y. Apr. 9, 2008) (denying summary judgment against officer where dispute of fact existed as to whether undercover officer testified falsely to grand jury and gave false information to prosecutor); *Crespo v. New York City Police Com'r*, 930 F. Supp. 109, 117-18 (S.D.N.Y. 1996) (allegations that officer gave false testimony to grand jury sufficient to defeat summary judgment.)

**\*8** In arguing to the contrary, the Defendants rely on a presumption that does not apply here and ignore or construe the allegations too narrowly. The Defendants contend that a presumption arising from New York law requires the conclusion that the prosecutor and not the arresting officers "initiated" the criminal proceeding. While Defendants are correct that "New York law imposes a presumption that a prosecutor exercises his own

independent judgment in deciding to prosecute," *Gilman v. Marsh & McLennan Cos., Inc.* 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012), they overlook that the presumption generally does not apply "in malicious prosecution actions alleging that a police officer provided false information to a prosecutor" and "where a police officer is alleged to have maliciously misled a prosecutor." *Cameron v. City of New York*, 598 F.3d 50, 63-64 (2d Cir. 2010). Plaintiff's allegations that the officers planted evidence and perpetuated false testimony to the grand jury and at trial are sufficient at this stage of the litigation to meet the first element of a malicious prosecution claim.

Beyond contending that the officers did not "initiate" the criminal proceeding against Plaintiff, the Defendants do not argue and the Court does not find that Plaintiff has otherwise failed to state a claim against Lacoste and Lawrence for malicious prosecution. Plaintiff alleged that he was acquitted (Plaintiff's Aff. in Opp'n to Mot., Doc. 26-1, at 1.), and the above-discussed allegations of evidence tampering and false testimony are sufficient to suggest both malice and an absence of probable cause. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (lack of probable cause generally raises an inference of malice). For these reasons the Court concludes that

Plaintiff has stated a claim for malicious prosecution against both Lacoste and Lawrence under Sections 1983 and 1985.

### III. CONCLUSION

For the above reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. (Rec. Doc. 27). All Plaintiff's claims except his malicious prosecution claims against Lawrence and Lacoste are hereby **DISMISSED**. Plaintiff's claims arising from his arrest and incarceration are untimely, his claims against Hynes and Albanese are barred by prosecutorial immunity, and his allegations as to the City, Hynes, Kelly, and Bloomberg are also too conclusory to state a claim. The malicious prosecution claims against Lawrence and Lacoste will proceed before Magistrate Judge Reyes for discovery as needed.

**SO ORDERED.**

**All Citations**

Slip Copy, 2016 WL 7217197

Footnotes

1   The Complaint also names Police Officer David Lawrence as a defendant. Officer Lawrence was served on April 28, 2014, but appears to be unrepresented in this action and has neither answered the Complaint, nor joined the motion to dismiss filed on behalf of the moving Defendants.

2   Plaintiff has attached to the Amended Complaint transcripts from two separate hearings that appear to both relate to the indictment on August 16, 2008. The first transcript is from October 18, 2010. (Doc. 4-1, at 107.) The second transcript is from April 6, 2011. (Doc. 4-1, at 105.) No trial transcripts or other evidence related to a trial appear in the record.

3   Plaintiff's papers make no mention of his arraignment, but it must have occurred within a few days of his arrest if charges were indeed filed against him, as Plaintiff asserts.

4   To the extent that Plaintiff asserts claims against the city for a policy or practice allowing "discriminat[ion] against due process rights" by permitting officers to file false charges, the CVD does not toll the limitations period. The triggering event for this claim is the filing of false charges by the Officers and possibly also the allegedly false grand jury testimony. Subsequent instances of false testimony are merely the continued effects of these events, not additional acts in furtherance of the alleged policy.

5   Since the Supreme Court stated in *Iqbal* that "purpose rather than knowledge is required to impose ... liability on ... an official charged with violations arising from his or her superintendent responsibility, 556 U.S. 622, a number of district courts in the Second Circuit have held that only the first and third factors are valid bases for establishing personal involvement of supervisory defendants. *See, e.g., Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141, at * 20, 2009 WL 1835939 (S.D.N.Y. June 26, 2009), aff'd, 387 Fed.Appx. 55 (2d Cir. 2010); *Spear v. Hugles*, No. 08 Civ. 4026, 2009 U.S. Dist. LEXIS 62055 (S.D.N.Y. July 20, 2009). The Second Circuit has not specifically decided the issue. See *Doe v. Whidden, 557 Fed.Appx. 71 n.1 (2d Cir. 2014)*; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013,); *Reynolds v. Barrett*, 685 F.3d 193, 206 n. 14 (2d Cir. 2012). Here, the Court assumes but does not decide that each of the five factors are still a valid means for establishing involvement.

**End of Document**                                          © 2017 Thomson Reuters. No claim to original U.S. Government Works.