UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARRYL L. HAWTHORNE,

                          Plaintiff,

v.                                                                          1:17-CV-0716
                                                                             (GTS/TWD)
TYSON RUECKER, Albany Police Officer, in his
individual and official capacity; DEVIN
ANDERSON, Albany Police Officer, in his
individual and official capacity; SEAN PERKINS,
Albany Police Officer, in his individual and official
capacity; ALEX CHEBAN, Albany Police Officer,
in his individual and official capacity; JOHN
NORRIS, Albany Police Officer, in his individual
and official capacity; and SERGEANT CHRIST,
Albany Police Dept.,

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

DARRYL L. HAWTHORNE
  Plaintiff, *Pro Se*
18 Union Avenue
Staten Island, NY 10303

THE REHFUSS LAW FIRM, P.C.                     ABIGAIL W. REHFUSS, ESQ.
  Counsel for Defendants                              STEPHEN J. REHFUSS, ESQ.
40 British American Boulevard
Latham, NY 12110

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this *pro se* civil rights action filed by Darryl L. Hawthorne

("Plaintiff") against Albany Police Department officers Tyson Ruecker, Devin Anderson, Sean

Perkins, Alex Cheban, John Norris, and Sergeant Christ ("Defendants"), is Defendants' motion

for summary judgment under Fed. R. Civ. P. 56 or, in the alternative, motion to dismiss with prejudice for failure to prosecute under Fed. R. Civ. P. 41(b).  (Dkt. No. 56.)  For the reasons set forth below, Defendants' motion is granted.

## I.   RELEVANT BACKGROUND

### A.   Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff asserts five claims: (1) a claim for illegal search and seizure against Defendants Anderson and Perkins; (2) a claim for use of excessive force against Defendants Anderson, Perkins, and Cheban; (3) a claim for false arrest against Defendants Anderson, Perkins, Cheban, Christ, Ruecker, and Norris; (4) a claim for malicious prosecution against Defendants Anderson, Perkins, Cheban, Norris, and Ruecker; and (5) a claim of deprivation of property without due process against Defendants Anderson, Perkins, and Christ.[1]  (Dkt. No. 8, at 13-23 [Pl.'s Am. Compl.].)  All of these claims arise from an incident occurring on March 16, 2015, in which Plaintiff alleges that Defendants variously accosted him in a hallway of the Capitol Green Apartments, abused him with racial slurs, threats of violence, and actual violence, performed cavity searches of his anus without his consent, arrested him on false charges, and manufactured or planted evidence of narcotics to support those false charges. (*Id.* at 2-13.)

### B.   Undisputed Material Facts on Defendants' Motion for Summary Judgment

Plaintiff did not provide a response to Defendants' Statement of Material Facts as required by the Local Rules of this Court.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party

---

[1]      Plaintiff's claims against the City of Albany were dismissed with prejudice by this Court's Decision and Order of December 19, 2017.  (Dkt. No. 14 [Decision and Order filed Dec. 19, 2017].)

shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror

the movant's Statement of Material Facts by admitting and/or denying each of the movant's

assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall

set forth a specific citation to the record where the factual issue arises.").  Even considering

Plaintiff's *pro se* status, his failure to respond according to the Local Rules entitles the Court to

deem the factually supported assertions in Defendants' Statement of Material Facts to be

admitted because he was repeatedly informed of the consequences of such a failure to respond.

*See* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set

forth in the Statement of Material Facts that the opposing party does not specifically

controvert."); *Sankara v. Montgomery*, 16-CV-0885, 2018 WL 4610686, at *4 (N.D.N.Y. June

25, 2018) (Dancks, M.J.) (noting that the Court will accept a movant's statement of facts as true

if a *pro se* plaintiff has not properly responded despite being specifically advised of the possible

consequences of failing to respond to the motion), *adopted by* 2018 WL 3408135 (N.D.N.Y. July

13, 2018) (Scullin, J.).  *See also, infra,* note 14 of this Decision and Order.

In particular, on June 30, 2017, Plaintiff acknowledged his receipt of (1) a courtesy copy

of Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court, (2) pages 39 and 40 of the

District Court's *Pro Se* Handbook (specifically notifying a non-movant of the consequences of

failing to respond to a motion for summary judgment's Statement of Material Facts), and (3) a

page repeating that notice.  (Dkt. No. 3.)  Moreover, on December 9, 2019, Plaintiff was mailed

the District's form Notification of the Consequences of Failing to Respond to a Summary

Judgment Motion, which specifically states that he was required to provide a response to

Defendants' Statement of Material Facts and warns of the consequences of failing to do so.  (Dkt.

3

No. 57 [attaching Notification of the Consequences of Failing to Respond to a Summary

Judgment Motion to Defendants' motion].)  Despite receiving these notices, Plaintiff did not

provide any response to Defendants' Statement of Material Facts.  (*See generally* Docket Sheet.)

However, this does not end the Court's analysis of Defendants' Statement of Material

Facts because the Court must assure itself that the facts contained in that Statement are supported

by admissible record evidence.  *See, infra*, Part II of this Decision and Order.  In doing so, the

Court may, and does, consider Plaintiff's sworn Amended Complaint.[2]  (Dkt. No. 8.)  Having

done so, the Court has deemed as admitted the following asserted facts, which are each supported

by the admissible evidence and not controverted by any admissible record evidence.  (Dkt. No.

56, Attach. 1 [Defs.' Rule 7.1 Statement].)[3]

---

[2]       The Court notes that Plaintiff declared in his Amended Complaint that the
allegations contained in that pleading were true and correct under penalty of perjury.  (Dkt. No. 8,
at 23 [Pl.'s Am. Compl.].)  As a result, Plaintiff's Amended Complaint must be treated as
verified, and thus must be considered to the same extent as an affidavit for the purposes of
determining whether a material fact exists.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.
1995) (noting that a complaint can be verified by attesting under penalty of perjury that the
statements in the complaint are true to the best of the plaintiff's knowledge, and that "[a] verified
complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be
considered in determining whether material issues of fact exist"); *accord, Ross v. Koenigsmann*,
14-CV-1321, 2016 WL 11480164, at *17 (N.D.N.Y. Sept. 8, 2016) (Stewart, M.J.), *adopted by*
2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016) (Suddaby, C.J.).

[3]       The Court notes that Defendants' asserted facts numbers 30 through 50 relate to
the procedural history of this case.  (Dkt. No. 56, Attach. 1, at ¶¶ 30-50 [Defs.' Rule 7.1
Statement].)  Although these facts are material to Defendants' motion to dismiss for failure to
prosecute, these facts are not material to Defendants' motion for summary judgment.  This is
because the determination of whether to dismiss an action for failure to prosecute is the
responsibility of the Court, not a factfinder such as a jury.  *See Joseph Muller Corp. Zurich v.
Societe Anonyme De Gerance Et D'Armement*, 508 F.2d 814, 815 (2d Cir. 1974) ("Dismissals
under Rule 41[b] are, of course, largely a matter of the trial court's discretion.").  As a result, the
Court has omitted these asserted facts from this Decision and Order's Statement of Undisputed
Material Facts.

1.      On March 16, 2015, Detective Ruecker and Detective Norris received investigative intelligence from a confidential source that an individual was transporting crack cocaine inside the Capitol Green Apartments located at 400 Central Avenue.

2.      The confidential informant advised Detective Ruecker that the individual was a black male with dark skin and black hair, with a height of 5'2" and a weight of 150 pounds, who was wearing a grey sweatsuit, brown leather jacket, and black sneakers, and who was possibly wearing a gray hat.

3.      The confidential informant further advised that the subject was in possession of crack cocaine located in the rear of his pants area and would most likely be wearing double layers underneath; Detective Ruecker considered this informant to be a reliable source who had been used by other detectives in the past.

4.      This intelligence was forwarded to Officer Perkins and Sergeant Anderson, both of whom were with the Neighborhood Engagement Unit ("NEU").  Upon receiving this information, they responded to 400 Central Avenue on March 16, 2015.

5.      After arriving at 400 Central Avenue, Officer Perkins and Sergeant Anderson witnessed Plaintiff (who matched the description given by the confidential informant) wait for a tenant to go through the locked main front door of the Capitol Green Apartments, follow that tenant inside the building, fail to sign in at the front desk, and get on an elevator to the 11th floor.

6.      The Capitol Green Apartments building is part of the Albany County Trespass Affidavit Program; as part of the program, and in an effort to exclude intruders, the apartment building has key-card access and has signs posted at each entryway stating "No Trespassing."

7.      In order to become part of the Albany County Trespass Affidavit Program,

property owners must contact the District Attorney's Office, fill out a provided affidavit with a list of registered tenants who live in the building and file that affidavit with the District Attorney's Office, which will send to the property owners signs that read, "No Trespassing. This building is for tenants and their guests only.  Safe Homes–Safe Streets Trespass Affidavit Program.  To report any violations call [number]."

8.      Upon observing Plaintiff unlawfully enter the building, Sergeant Anderson and Officer Perkins entered the building, took the elevator to the 11th floor, approached Plaintiff and requested his pedigree information; Plaintiff responded that he did not have any identification.[4]

9.      While talking to Plaintiff, Sergeant Anderson noticed what appeared to be the outline of a credit card or driver's license in Plaintiff's front left chest pocket; Sergeant Anderson therefore asked Plaintiff to produce the contents of that pocket, and, when Plaintiff complied, marijuana fell out of that pocket.[5]

10.      Specifically, one marijuana cigarette fell out of his left chest pocket and two plastic bags containing a quantity of marijuana were located in his left hand.

---

[4]      Defendants assert that Plaintiff provided them with the name Tyseek Simmons upon questioning him for pedigree information in the hallway of the Capitol Green Apartments. (Dkt. No. 56, Attach. 1, at ¶ 8 [Defs.' Rule 7.1 Statement].)  However, Plaintiff swears in his verified Complaint that Defendant Christ gave him that name after Plaintiff had been at the police station for more than 30 minutes (which Defendant Christ got from Plaintiff's Facebook page after Defendant Perkins had gone through Plaintiff's phone) in order to charge him with false impersonation.  (Dkt. No. 8, at 17 [Pl.'s Compl.].)  Additionally, in the evidence cited by Defendants, it is noted that Defendant Perkins stated that Plaintiff provided the name Jayshawn Litrell during the interaction in the hallway of the Capitol Green Apartments.  (Dkt. No. 56, Attach. 8, at 5.)  For all of these reasons, the Court has deemed disputed the assertion that Plaintiff provided Defendants with the name Tyseek Simmons in the hallway.

[5]      Although Plaintiff does not mention this exchange or the marijuana in his Amended Complaint, he never affirmatively asserts that it did not occur.  Thus, the Court finds that this fact has not been disputed by the admissible record evidence.

11.    Plaintiff admitted that the marijuana was his when it fell out of his pocket by stating, "that's mine."

12.    Plaintiff was placed under arrest and was searched incident to his arrest.  He was wearing several layers of pants and Sergeant Anderson asserts that, in the process of separating those layers to check for weapons or illegal substances, he saw a clear plastic bag sticking out of Plaintiff's buttocks area.[6]

13.    Sergeant Anderson and Officer Perkins had Plaintiff transported to the Albany Police Department in the vehicle driven by Officer Cheban ("Unit 101").

14.    After arriving at the Albany Police Department Central Booking, Plaintiff was brought to the designated strip search area, where Officer Perkins and Sergeant Christ were present.

15.    During the strip search conducted at the precinct, the plastic bag that Sergeant Anderson asserts he saw earlier in Plaintiff's buttocks area was gone.  The central booking area and Unit 101 were both searched.

16.    Officer Perkins found the plastic bag in Unit 101 secreted under the passenger seat where Plaintiff had previously been sitting.

17.    The Albany Police Department's Standard Operating Procedures require officers to conduct vehicle inspections before going on patrol, and to notify a supervisor if contraband is found during inspection.  Officer Cheban advised that no contraband was found during the inspection of Unit 101 prior to transporting Plaintiff on March 16, 2015.

---

[6]    The Court notes that, because Plaintiff (in his verified Amended Complaint) denies that any such bag or drugs were present, the Court has modified the asserted fact to reflect what Defendant Anderson reported in the cited evidence.

18. The plastic bag recovered from Unit 101 contained 16 smaller vacuum sealed plastic bags containing a quantity of crack cocaine.

19. The crack cocaine was weighed and field tested by Officer Anderson with positive results; it had an aggregate weight of eight grams (more than one-eighth of an ounce).

20. Plaintiff was charged with violating N.Y. Pen. L. § 220.16 (criminal possession of a narcotic drug with intent to sell), N.Y. Pen. L. § 220.09(1) (criminal possession of a narcotic drug), N.Y. Pen. L. § 221.05 (unlawful possession of marihuana), N.Y. Pen. L. § 140.10 (criminal trespass in the 3rd degree, enclosed property), and N.Y. Pen. L. § 190.23 (false personation).

21. The allegation of intent to sell was based on the quantity of the drug, the packaging of the drugs, Plaintiff's prior criminal history, the amount of cash and bill denominations found on Plaintiff's person, and the lack of drug paraphernalia present.

22. Plaintiff filed a citizen complaint against Officer Perkins and Sergeant Anderson, the result of which was a formal investigation conducted by the Albany Police Department's Office of Professional Standards ("OPS").

23. During the OPS investigation, Detective Reith and Detective Shane canvassed the entire 11th floor of the Capitol Green Apartments building and interviewed several of the residents, none of whom heard any noise related to an altercation on March 16, 2015, and many of whom advised that they would have contacted the police had they heard anything.

24. Detectives Reith and Shane also observed that the 11th floor where the alleged altercation happened appeared to be undisturbed.

25. Additionally, Plaintiff never sought medical attention after allegedly being strip-

8

searched, punched in the stomach, put in a chokehold, and having his leg dragged in the door of a

moving vehicle, and Plaintiff, while in booking, never complained to anyone about what had

happened or a need for medical care.[7]

26.     A Grand Jury indicted Plaintiff on charges of Criminal Possession of a Controlled

Substance in the Third Degree in violation of N.Y. Pen. L. § 220.16(1) and of Criminal

Possession of a Controlled Substance in the Fourth Degree in violation of N.Y. Pen. L. §

220.09(1).  These were the only two crimes charged in the indictment.

### C.     Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.     Defendants' Memorandum of Law

Generally, in their motion for summary judgment, Defendants make six arguments.  (Dkt.

No. 56, Attach. 2, at 6-18 [Defs.' Mem. of Law].)  First, Defendants argue that there was

reasonable suspicion to stop and detain Plaintiff at the Capitol Green Apartments for

investigative purposes because (a) they were acting on a tip from a reliable confidential

informant that an individual matching Plaintiff's description was transporting crack cocaine to

the building, and (b) they observed him waiting for a tenant to open the locked entrance door to

the apartment building, following that tenant inside the building, and failing to sign in at the front

desk as was required for non-residents of the building, all of which was in violation of the

Trespass Affidavit Program.  (*Id.* at 6-8.)

Second, Defendants argue that there was probable cause to arrest Plaintiff based on (a)

---

[7]     Along with his Amended Complaint, Plaintiff has attached portions of records
from emergency room visits that occurred in February 23, 2016, and October 16, 2016.  (Dkt.
No. 8, Attach. 1.)  There is no indication as to how these medical visits relate to the events of
March 16, 2015.

their observations of Plaintiff's entrance into the building (discussed above), (b) Plaintiff's use of

a false name and his assertion that he did not have any identification, and (c) Defendants

Anderson's and Perkins' observation that marijuana fell from Plaintiff's shirt pocket during their

discussion with him.  (*Id.* at 8-9.)

Third, Defendants argue that there was probable cause to prosecute Plaintiff based on the

presumption created by the grand jury indictment for criminal possession of a controlled

substance in the third and fourth degree, given that Plaintiff has not provided any admissible

evidence that the indictment was obtained through fraud, perjury, or suppression of evidence.

(*Id.* at 9-10.)

Fourth, Defendants argue that Plaintiff was not subjected to excessive force because (a)

contrary to his assertions, he was never strip-searched or subjected to any force while engaging

with the officers in the hallway of the apartment building, (b) he never sought medical attention

for his alleged injuries and never informed any of the officers or anyone else at the station about

the force he allegedly was subjected to, and (c) the strip search that was eventually conducted

incident to his arrest was supported by probable cause and thus does not constitute excessive

force.  (*Id.* at 10-13.)

Fifth, Defendants argue that Plaintiff's due process claim must be dismissed because New

York provides an avenue for him to seek recovery of the property he alleges was taken by

Defendants and his federal claim is thus precluded.  (*Id.* at 13.)

Sixth, Defendants argue that, in the alternative, Plaintiff's Amended Complaint should be

dismissed with prejudice for failure to prosecute under Fed. R. Civ. P. 41(b).  (*Id.* at 13-18.)

More specifically, Defendants argue that Plaintiff has a history of failing to comply with

discovery orders and the Court's directives, has been given multiple warnings that failure to

comply with such orders and directives could result in dismissal, and has not yet provided

answers to Defendants' initial discovery demands, provided any Rule 26(a)(1) disclosures, or

appeared for deposition. (*Id.*) Defendants argue that the failure to cooperate with discovery in

particular has prejudiced them by hampering their ability to prepare a defense against Plaintiff's

asserted claims. (*Id.*)

### 2. Plaintiff's Failure to Respond

Plaintiff failed to file a response to Defendants' motion by the deadline of December 30,

2019, and has not filed any response or a request to file a response out-of-time as of the date of

this Decision and Order. (*See generally* Docket Sheet.)

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there

is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is

such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[8] As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

---

[8]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are
insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.
1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more
than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*
*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[9]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[10]  (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[11]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.[12]

Of course, when a non-movant willfully fails to respond to a motion for summary

---

[9]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[10]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[11]     *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[12]     *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[13]–even where the non-movant was proceeding *pro se*.[14]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[15]

---

[13]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[14]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[15]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's

Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

After carefully considering whether Defendants' unopposed motion should be granted, the Court answers this question in the affirmative; the Court finds that, at the very least, the alternative argument asserted in Defendants' motion (arising under Fed. R. Civ. P. 41[b]) possesses facial merit for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 56, Attach. 2, at 13-18 [Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis (which is meant to supplement, and not supplant, the reasons offered by Defendants).

Rule 41(b) of the Federal Rules of Civil Procedure states that, "[i]f a plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or a claim against it" and such a dismissal "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).  Dismissal of an action with prejudice under this rule is a "harsh remedy to be utilized only in extreme situations."  *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209

---

failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

(2d Cir. 2001) (internal quotation marks and citation omitted).  This is particularly true where a plaintiff is proceeding *pro se.  See, e.g., Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (holding that the circuit court will give due deference to the district court's Fed. R. Civ. P. 41[b] dismissal of a *pro se* litigant's complaint "only when the circumstances are sufficiently extreme"). However, notwithstanding a plaintiff's *pro se* status, Fed. R. Civ. P. 41(b) gives the district court explicit authority to dismiss a case where the plaintiff fails to comply with the court's orders or otherwise fails to prosecute the action "diligently."  *Lyell Theatre Corp. v. Loews Corp*., 682 F.2d 37, 43 (2d Cir. 1982).  As explained in *Lyell Theatre*, this authority "is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts."  *Lyell Theatre Corp.*, 682 F.3d at 42.

The Second Circuit has indicated that, before dismissing a case for failure to prosecute, the court must weigh five factors: (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay in the proceedings; (4) balancing the court' interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction that is less drastic than dismissal.  *Lewis v. Frayne*, 595 F. App'x 35, 36 (2d Cir. 2014).

Plaintiff filed his Amended Complaint on October 6, 2017, as well as supplemental exhibits to that Amended Complaint on November 6, 2017.  (Dkt. Nos. 8, 12.)  On December 20, 2017, the Court directed Plaintiff to forward six copies of the Amended Complaint and attachments to the Clerk's Office by January 10, 2018.  (Dkt. No. 16.)  On March 13, 2018, the Court noted that Plaintiff had failed to forward these copies, but extended the deadline for him to

do so to April 13, 2018, and warned him that failure to comply "may result in dismissal of the Amended Complaint for failure to follow Court Orders and failure to prosecute.  (Dkt. No. 17.)  On April 18, 2018, the Court noted that Plaintiff still had not forwarded the copies and directed Plaintiff to do so by May 7, 2018, and also to show good cause why the Court should not recommend that the Amended Complaint be dismissed for failure to prosecute.  (Dkt. No. 18.)  After receiving an explanation from Plaintiff on April 30, 2018, the Court granted Plaintiff until May 16, 2018, to forward the copies.  (Dkt. Nos. 19, 20.)  On May 24, 2018, the Court noted that Plaintiff did not provide anything until May 17, 2018, and that the materials he submitted were incomplete, but that it would not require Plaintiff to submit anything further.  (Dkt. No. 21.)  Plaintiff completed the Civil Case Management Plan on August 15, 2018.  (Dkt. No. 36.)

However, despite the fact that Plaintiff had been directed to provide a telephone number where he could be reached for the initial telephone conference, the Court was unable to reach Plaintiff for that conference on August 23, 2018, at which time it indicated it would issue an order that Plaintiff's failure to participate in conferences and follow Court directives might result in sanctions, including dismissal of his case.  (Text Order filed Aug. 23, 2018.)  On August 30, 2018, the Court scheduled a telephone status conference for January 8, 2019, but, when mail sent to the given address (including notice of the telephone conference) was returned as undeliverable on December 12, 2018, and January 2, 2019, the Court adjourned that conference and directed Plaintiff to file an updated address and phone number by February 1, 2019, warning him that failure to do so might result in dismissal of the action.  (Dkt. No. 43.)  On January 22, 2019, Plaintiff contacted the Court with an updated phone number, and he formally updated his address on February 1, 2019.  (Dkt. No. 44, 45.)  On July 2, 2019, a telephone status conference was

scheduled for July 16, 2019; however, on that date, Plaintiff failed to join the call and could not

be reached at the telephone number he had provided.  (Text Minute Entry filed July 16, 2019.)

At that time, Defendants notified the Court that Plaintiff had not responded to any discovery

demands and that they had been unable to conduct a deposition of Plaintiff.  (*Id.*)  The Court

consequently extended the discovery deadlines and warned Plaintiff that his failure to serve

responses to Defendants' discovery demands and follow all Court orders might result in

sanctions including dismissal of the action for failure to prosecute and failure to follow Court

orders. (Dkt. No. 49.)  Plaintiff failed to provide a telephone number and, on August 14, 2019,

the Court again warned Plaintiff that failure to comply with Court orders and participate in

discovery and other proceedings could result in the dismissal of his action.  (Dkt. Nos. 50, 51.)

On September 30, 2019, Plaintiff filed a letter in which he provided a telephone number and

requested that deadlines be extended so that he could obtain counsel.  (Dkt. No. 54.)  On that

same day, the Court noted that pretrial deadlines (such as discovery) had already expired and

would not be extended, but it did grant an extension of the time to file dispositive motions.  (Dkt.

No. 55.)  Defendants filed their current motion for summary judgment on December 6, 2019,

and, on December 9, 2019, the Court filed a notice to Plaintiff that his response to that motion

was due by December 30, 2019, and also informed him of the consequences of failing to respond

to the motion, including that failure to respond could result in dismissal of his claims.  (Dkt. No.

57.)

     As to the duration of the non-compliance, the Court finds that, based on the available

evidence, it has been approximately two-and-a-half-years since Plaintiff filed his Amended

Complaint and he still has not provided any disclosures or discovery to Defendants.  Plaintiff

requested an extension of all deadlines (including discovery) on September 30, 2019 (after the time for discovery had already closed), based on his desire to obtain counsel; however, Plaintiff never expressed a desire to obtain counsel at any point prior to that time.  The case was delayed for four months due to Plaintiff's failure to submit copies of the Amended Complaint as directed, and it was not until the end of that four-month period that Plaintiff explained the delay had been due to (a) his inability to afford such copies, and (b) injuries from a more-recent assault by police officers that allegedly rendered him unable to walk between January and April 2018.  (Dkt. No. 19.)  Even with these explanations, Plaintiff's submission, once provided, was late and did not materially comply with the Court's order.  Plaintiff then failed to appear for two separate telephone conferences on August 23, 2018, and July 16, 2019, despite the fact the Court had made multiple attempts to obtain a correct address and telephone number for Plaintiff over a prolonged period of time (requests to which Plaintiff either did not respond or responded with incomplete information).  Additionally, Plaintiff completely failed to respond to the discovery demands Defendants made as early as September 2018 (in part due to some of Plaintiff's mail being undeliverable to the address that Plaintiff had provided to the Court) and Defendants' deposition of Plaintiff had to be cancelled due to this failure to respond.  (Dkt. No. 56, Attach. 2, at 12 [Defs.' Mem. of Law].)  Notably, Defendants indicate that, once Plaintiff provided an appropriate address, they re-sent their discovery demands to that address on February 6, 2019. (*Id.* at 16.)  However, Plaintiff still had not provided any disclosures or discovery by the July 2019 telephone conference (which, as noted above, he did not appear for), nor by the time the discovery deadline passed on September 18, 2019, approximately seven months after Defendants had re-sent their demands.  Plaintiff has not offered any explanation for this failure other than

that he is *pro se* and "do[es] not know what is required of [him] at this point."[16]  (Dkt. No. 54.)

He also failed to respond to Defendants' current motion despite being on notice that the deadline

for the submission of such motion would not be extended, and that his claims could be dismissed

if he failed to respond to the motion.  (Dkt. Nos. 55, 57.)  Of note, Plaintiff had approximately

two months to obtain counsel before the dispositive motion deadline, and there is no indication

that he has done so despite his previously expressed intent.  The Court therefore finds that there

have been significant delays that were within the control of Plaintiff, and that such fact weighs in

favor of dismissal for failure to prosecute.

As to whether Plaintiff was on notice that the failure to comply would result in dismissal,

the Court finds, as already detailed above, that Plaintiff has been provided with multiple

warnings that failing to comply with Court orders and procedures might result in dismissal of his

claims.  Additionally, as noted above, Plaintiff was also provided with the Court's standard *Pro*

*Se* Handbook and other documents that warn of the need to comply with Court procedures.  (Dkt.

No. 3.)  This fact also weighs in favor of dismissal.

As to whether Defendants are likely to be prejudiced by further delays, the Court finds

that Defendants have been prejudiced by Plaintiff's actions already, particularly Plaintiff's failure

to attend telephone conferences and to comply with any of Defendants' requests for discovery,

---

[16]      The Court notes that, as a *pro se* plaintiff, Plaintiff was provided with the Court's
standard *Pro Se* Handbook and other documents that explain the litigation process and Plaintiff's
responsibilities.  Plaintiff also filed a Case Management Plan in August 2018 in which Plaintiff
indicated that the parties agreed that discovery was needed, that the parties understood the timing
of discovery, and that discovery such as interrogatories, documents, demands, and depositions
would likely be needed.  (Dkt. No. 36, at 7-8.)  These facts undermine any argument that
Plaintiff's *pro se* status rendered him incapable of understanding or complying with the Court's
orders and the discovery expectations, because the facts show that he reasonably understood that
he had certain obligations specifically related to discovery.

and will likely continue to be prejudiced.  *See Lyell Theatre Corp.*, 682 F.3d at 43 ("Prejudice to defendants from unreasonable delay may be presumed.").  At this point, at which this case has been pending for a few months short of three years and discovery has closed, Defendants have been unable to get even basic disclosures from Plaintiff, much less more extensive discovery such as depositions.  The only materials they have received from Plaintiff are the attachments to the Amended Complaint, which are various documents related to his arrest and prosecution for the underlying criminal charges.  Being denied the chance to obtain relevant information from Plaintiff has directly hampered Defendants' ability to present a full defense, and such prejudice will only worsen as time continues to pass and memories of the events in question begin to fade. This fact also weighs in favor of dismissal.

As to whether the Court's interests outweigh Plaintiff's interest in having a chance to be heard, the Court finds that they do.  The Court again notes that this case has been pending for approximately two-years-and-nine-months and, in the approximately two-and-a-half-years since Plaintiff filed the Amended Complaint, he has made very little effort to move this litigation forward and has given little indication that he has any genuine intent to do so.  At this point, the Court's options are essentially (a) to extend the time for Plaintiff to comply with discovery requirements without any indication that Plaintiff will take advantage of the opportunity, or (b) decide Defendants' motion for summary judgment on the merits based on an incomplete record and very likely proceed to a trial in which Defendants will have to mount a defense against testimony by Plaintiff for which they had no reasonable or fair opportunity to prepare.  Neither of these options presents a situation that is in the interests of judicial economy or fairness.  Given that Plaintiff's past conduct suggests that he will not take advantage of any further opportunity to

pursue his case diligently, the Court finds that its need to manage its docket and attend to the matters it is assigned outweighs Plaintiff's interest in having his claims continue. *See McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 123 (2d Cir.1988) ("[A]ll litigants, including pro [se litigants], have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions."). This factor therefore also weighs in favor of dismissal.

Lastly, the Court has considered less severe sanctions, but has concluded that none would adequately address Plaintiff's conduct. As discussed above, Plaintiff has shown a total disregard for the orders and procedures of this Court up to this point despite the many multiple warnings that continuing to act in that manner could result in the dismissal of his claims. Plaintiff has also not only failed to take the necessary actions to move his case forward, but has actively hampered the efforts of Defendants and this Court to do so. These actions suggest that less severe sanctions would not adequately address Plaintiff's actions.

This finding is supported by decisions of other courts in similar cases. *See Hunter v. New York State Dept. of Corr. Servs.*, 515 F. App'x 40, 42-43 (2d Cir. 2013) (finding district court did not abuse its discretion in dismissing complaint for failure to prosecute where, among other reasons, plaintiff caused a 14-month delay and was provided with notice of the consequences of failing to comply with court requirements and deadlines); *Galberth v. Bielwiez*, 15-CV-1443, 2019 WL 5895680, at *1 (N.D.N.Y. Nov. 12, 2019) (McAvoy, J.) (adopting recommendation of dismissal for failure to prosecute where plaintiff refused to attend a deposition, defied court orders to appear, failed to keep the court updated with his current address and was warned that the case could be dismissed due to his actions); *Lewis v. Livingston Cnty.*, 314 F.R.D. 77, 80

21

(W.D.N.Y. 2016) (finding that, among other reasons, the plaintiff's failure to provide responses

to the defendant's discovery demands that resulted in a ten-month delay in the case constituted

sufficient justification to dismiss for failure to prosecute); *Samman v. Conyers*, 231 F.R.D. 163,

165 (S.D.N.Y. 2005) (finding dismissal warranted, in part, where the plaintiff failed to advance

the discovery process and failed cooperate with the defendants' efforts to advance the discovery

process in the course of the two years since the amended complaint was filed because such

actions were within the plaintiff's control and prevented the defendants from effectively

preparing their defense); *Schwed v. Gen. Elec. Co.*, 193 F.R.D. 70, 73 (N.D.N.Y. 2000) (Mordue,

J.) (finding dismissal appropriate where plaintiffs had not done anything to further their case for

four years, had failed to file opposition papers, and failed to cooperate with discovery requests,

noting in particular that failure to respond to discovery had prejudiced the defendants by

inhibiting their ability to prepare its defense).

      For all of the above reasons, the Court dismisses Plaintiff's Amended Complaint with

prejudice.

      **ACCORDINGLY**, it is

      **ORDERED** that Defendants' alternative motion to dismiss for failure to prosecute (Dkt.

No. 56) is **<u>GRANTED</u>**; and it is further

      **ORDERED** that Defendants' motion for summary judgment is **<u>DENIED</u>** as **moot**; and it

is further

      **ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 8) is **<u>DISMISSED</u> with

prejudice**.

Dated: April 29, 2020
       Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge